OPINION of the Court, by
Judge Wauace.--
"-^e entr}’ and survey on which Mosby and Craig rely, seem to be proven and conceded ta be correct ; and therefore, as they were complainants in the court below, *s Pr0Per to investigate the validity of the settlement and pre-emption on which the defendants in that court place their reliance. The location of the settlement wdb die commissioners, and its entry with the surveyor, areas follows : “ December 23d, 1779, David Gass this day claimed a settlement and pre-emption to a tract °^anA &c. lying on the dividing ridge of the south fork of Elkhorn and Jessamine creek, including a sinking spring,” &c. and “ February 3d, 1780, David Gass enters acres by certificate, fkc. lying on the dividing ridge of the south fork of Elkhorn and Jessamine, joining Stephens on the west, and Douglass on the north, and Soduskie on the east, including a sinking spring.” It is expressly admitted, that Stephens’s, Douglass’s and Soduskie’s surveys, and a sinking spring, by the name tlle linking spring, as they are laid down in the connected plat, were well known by those conversant in that part of the country, at the time this location and enttT were made. And it is proven by some of the depositions, or necessarily implied therein, that Jessamine, and the south fork of Elkhorn, and the dividing c’dge between them, were still more notoriously known/ But it is urged in argument, as a material defect, both in the location of the settlement with the commissioners, and in the entry with the surveyor, that the call for the Sinking spring, is not sufficiently definite, there being several other sinking springs on the same dividing r't%e‘ appears however, that the one claimed by the defendants, is the largest, and had, at an early day, attracted a much greater degree of attention than any die °diers. But if the location and entry ought both to be regarded, and the latter permitted to explain the former, it may thereby be ascertained which was the sinking spring intended. And in a number of cases, this court has held, that they should be allowed to aid

*0

Har. 1187 — Cle. land's heirs •vs. Gray, ante 35»
To join A, on the north, B. on the weft, and C. on the eaft, and include a Spring — how to furveyed.
1000 acres to join 400 on the north, to be fur-veyed in a jquare, the middle or the fou-them boundary of 1000 to be the middle of the norrhem boundary of the 400.
Similar principle in M'Ghee vs. Tbomfr-Jon — Craig vs* Machir, ante io —Davis vs, Lockhart's heirt Har. 368— Moore vs. Har-rhy Pr. Dec. 26.
Carland* affiance, enters a pre-emption warrant, adjoining his fettlement $ he having do fettle-adjoin Gafs of whom he was affignee, and to Hien^ the'preemption was isppendant.
*85 each other. But in all of them, it is believed, that the entry was an abridgement of the location, and not a departure from it. In the present case, the entry contains several additional calls, which, if they were a departure from the location, perhaps might be fatal to the claim.* There is however, no real repugnance, but it is conceived that the additional calls ought rather to be considered as an explanation, or a more explicit declaration of the intention of the locator. It cannot be pronounced with certainty, why the land law required both the certificate of settlement right, and an entry of the settlement, to be recorded with the surveyor of the county where the land was situated. It is sufficient at present to observe, that an application to the surveyor’s books, was a certain and easy way to get the best information of the claim : not to say, that by the original land law, no other way was provided. And when it is considered, that a location with the commissioners, was only required to be as particular as could reasonably be expected ; it would be too rigid to destroy the claim, because the owner, after acquiring further information, had made his entry with the surveyor more special and precise, than he had been able to give in a location to the commissioners. Let us now examine whether the defect complained of, is cured by the entry with the survey- or. It calls to adjoin Stephens on the west. In this call, taken in connexion with the preceding calls, there is no uncertainty. Stephens’s survey, which was well known, must be intended. Then the entry calls to adjoin Douglass on the north, and Soduskie on the east; and two old surveys made for those men, which were ^lso well known, must have been understood to be meant by the locator, had not Douglass and Soduskie, about the time that Gass obtained his certificate, likewise obtained certificates for settlement and pre-emption rights, and located their settlements on part of the same lands, which had before been surveyed for them, This produces another difficulty in ascertaining the situation and *86 form of Gass’s settlement. If Douglass’s and Saodufe kie’s surveys were meant, Gass’s settlement ought to have been surveyed in one way ; but if Douglass’s and Soduskie’s settlements were meant ( their pre-emptions not having then been specially located) Gass’s settlement ought to have been surveyed in another way. And whether other adventurers could have known, with rea» sonable certainty, that Douglass’s and Soduskie’s surveys, or their settlements, were intended, becomes aa important question. We have seen that Gass does not ca^ f°r Douglass and Soduskie, in his location with the commissioners, but only in his entry with the surveyor ; and v/e have decided, that the entry ought to be permit-te<I í0 l°cation» It further appears, that Gass’s entry with the surveyor, was. made prior to those of Douglass and Soduskie ; and it is not recollected, that any case nearly similar to this, has heretofore been settled ; so that we must be guided by general principles only. It would seem, when a call equally fits two objects, and one of them is matter of record, that that one should be understood ; and when a call equally fits two objects, the one generally known, and the other not, that the well known object should be understood ; and these considerations have had weight in the decision of several cases ; but it is conceived, they cannot operate in this case, for the following reasons : Gass’s entry with the surveyor, was made prior to those of Douglass and So-duskie ; and their claims to settlement rights, were of the kind which were to be located on vacant lands, and had no definite existence until placed on record. This indeed was first done, by locating them with the commissioners ; and these locations, if such as the land law required, were undoubted evidence of their pre-emptive right to the lands thus located ; and would have beea good locative calls in any other location or entry, which would either avail or bind its owner, as the case required. But it is also true, that other locators had no certain means of becoming acquainted with such locations, before they were recorded with the surveyor. Therefore, this court is of opinion, that Gass’s entry with the surveyor should be taken, as it would have been understood on the day it was made — at which time .Douglass’s and Soduskie’s surveys were generally known, and when it is highly probable, it was not gene *87 rally known, that they, or either of them, had obtained their certificates ; and as Douglass’s certificate is not exhibited, it does not even appear whether it had, or had not then been obtained. From these considerations, the presumption is strong, that Douglass’s and Soduskie’s surveys, would have been understood, and not their settlements. But the presumption seems to he rendered violent, by adverting, that their surveys were made by Douglass in the year 1774, who was the deputy surveyor that in the same year made Stephens’s military survey, and a great number of others, in that quarter of the country ; and it was"rational to conclude, that Douglass’s and Soduskie’s were of the same kind ; more especially as private surveys were not authorised by law. And moreover it was rational to conclude, that as calling for Stephens, must mean his survey, so that calling for Douglass and Soduskie, also meant their surveys. Indeed this train of ideas seems so natural, that their connexion could only have been broken by something contrary thereto having been presented to the mind, which is not shewn. So far, therefore, this court concurs with the decision of the court below, that Gass’s setltement survey, should have begun at Stephens’s southwestwardly corner, and bound on his west-wardly line, and on the northwardly line of Douglass’s survey. But the court is of opinion, (different from, that court,) that Gass’s settlement survey, should have extended along Douglass’s said line, until it reached the northeastwardly corner of Soduskie’s said survey'; by so doing, to comply, as far as rationally could be done, with the call to adjoin Soduskie on the east, and then have been extended northwardly in a rectangular form for quantity'. And in this way, as well as that directed by the court below, it appears from the connected plat, that the sinking spring, which is claimed by' the defendants in that court, and no other sinking spring, will be included. The pre-emption appendant to this settlement, was entered as follows : “ June 1st, 1780, Thomas Garland, assignee, enters a pre-emption warrant of 1000 acres, adjoining his settlement on the north side.” The situation and form of this settlement having been fixed, it is only necessary to mention, that, conformably to former decisions, the pre-emption should have been surveyed in a square, to adjoin the northwardly side of the *88 sett^emen^ the middle of its southwardly line si the middle of the said line of the settlement. It has indeed been objected in argument, that the word assignee, in this entrv, has no certain meaning, and that the words, adjoining his settlement, can only mean Garland’s set-tlemeht. But it is not shewn that he had a settlement in his own right, and the expression, assignee, necessarily alludes to some other person, and the name of that person might easily have been known, by having recourse to the pre-emption warrant, or to the record of the survey made thereon. This defect, however, is not made a point by the bill, neither expressly, nor by implication ; but on the reverse, it is set forth therein, that Thomas Garland claimed the pre-emption as assignee of David Gass.
Wherefore it is decreed, and ordered, that the said decree of the circuit court, for the county of Fayette, be reversed, and that each party do pay their own costs in this court incurred. And it is further decreed^ and ordered, that the suit be remanded to the said court, that it may cause the settlement and pre-emption on which the defendants there have founded their claims to be surveyed agreeably to the foregoing opinion, and enter up decrees for the complainants, against such of the defendants respectively, as shall be found to hold the legal title to any of the land claimed under the said settlement and pre-emption, which shall not be included in common, in the surveys thus severally made, and also, in the corresponding surveys of record, which have formerly been made thereon. And moreover, to decree and order whatever else law and equity may require in the case.

 Note. — The reafons why a total departure would be fatal, and fimilar principles tending to the Tame conlufion, will be found in thefe cafes, viz: Consilla vs, Briscoe, Hugh 45—Young vs. M'Kee, Hugh. 35—Myers vs. Speed, Hugh. 99—Kenton vs. M'Connel, Hugh. 169—Bryant and Owings vs. Wallace, Hugh. 197-209, Pr. Dec. 17-18—M'Millen vs. Miller, Har.495—Jasper vs. Quarles, Har. 468—M'Clure vs. Winlcck, ante 80—M’Ghee vs. Thompson, post. Williams vs. Taylor, ante 41.